## GULF REFINING COMPANY et al. v. MILLER (two cases).

1. The city court of Pelham, created by the act approved August 22, 1905 (Acts 1905, p. 325), is not a city court within the meaning of the constitution of this State, which authorizes certain city courts to grant new trials; nor has the city court of Pelham inherent power to grant new trials.

(a) The act creating the court fixes certiorari to the superior court as the exclusive remedy for correcting errors committed on the trial of cases in that court.

(b) If on the call of a case (an action for unliquidated damages based on tort) the judge, on request of the attorneys for the defendant, inquired of the jurors as to relationship to the parties, and two of the jurors, who were disqualified by reason of relationship to the plaintiff, failed to report such relationship and were accepted as jurors and participated in rendering a verdict against the defendants, and the relationship was not known or discovered by the defendants or their sole attorney until after verdict, the verdict would be illegal; but as no ruling was made at the trial holding the jurors competent, their disqualification could not be inquired into by petition for certiorari.

(c) The acceptance of disqualified jurors, under circumstances and in an

46

action of the character stated above, amounts to such a mistake as will authorize a court of equity to set aside the verdict rendered in the city court of Pelham, and order a new trial.

2. Relatively to errors committed on the trial of a case in the city court of Pelham, there is an adequate remedy at law by petition for certiorari; and where such a petition is pending before the judge of the superior court, the petitioner can not have an order consolidating that case with a petition to set aside, on equitable grounds, the verdict rendered in the city court.

3. Except as indicated in the second note, none of the grounds of demurrer were meritorious.

4. At the interlocutory hearing for injunction there was evidence on one side tending to show that the defendants and their sole attorney did not know of the disqualification of the jurors until after the verdict. There was evidence on the other side tending to show that the defendants were informed of the relationship while the case was under consideration by the jury and before verdict. Under this conflict of the evidence the judge did not err in refusing the injunction.

(*a*) But as it is probable that the judgment of the court was based on an erroneous view of the law, as indicated by its dismissal of the petition on demurrer, the judgment refusing the injunction will be affirmed, with direction that the court again hear the petition for injunction in the light of the rulings above made.

Nos. 2164, 2165. JULY 15, 1921.

Equitable petitions. Before Judge Harrell. Mitchell superior court. June 5, 11, 1920.

Sanford Miller instituted in the city court of Pelham an action for damages against the Gulf Refining Company, a corporation, and J. F. Jones, the agent in charge of the local business of the corporation. The action was founded on alleged negligence of the defendant in selling to the plaintiff gasoline on his application to buy kerosene. It was alleged that after procuring the gasoline the plaintiff filled his lamp under the belief that it was kerosene, and when he undertook to light the lamp an explosion occurred and the plaintiff was burned, thereby sustaining painful and serious personal injury. On the trial before a jury, a verdict was returned in favor of the plaintiff for the sum of $12,190.07. The defendants made a motion for a new trial, which the trial judge refused to entertain, on the ground that the city court of Pelham did not have jurisdiction to grant a new trial. Thereafter and within the time prescribed by law the defendants presented to the judge of the superior court a petition for certiorari. While the petition for certiorari was pending the same defendants instituted an equitable action in the superior court against Sanford Miller, alleging all that is stated above, and among other things the following in substance: When the case was called for

trial in the city Court of Pelham the defendants (plaintiffs in this equitable suit) requested the court to "purge the jury as to disqualification," which was done. "The list thus obtained and put upon defendants, petitioners herein, contained the names" of ·two persons who had qualified as jurors in the case, and the persons so qualifying were accepted and both served as jurors and participated in rendering the verdict. After the verdict had been rendered and judgment of the court entered thereon, petitioners learned that the two jurors above mentioned were disqualified on account of relationship as "third cousins" of the wife of the plaintiff in the damage suit, a fact concerning which neither of the plaintiffs in the equity suit nor their counsel had any knowledge or information prior to the judgment of the court. The attack upon the verdict on account of disqualification of the jurors could not be raised by certiorari, because it did not involve any ruling or error of law committed on the trial; and it could not be raised by motion for new trial, because the city court of Pelham was a statutory court and did not have jurisdiction inherently, under the laws or constitution of the State, to grant new trials, it being provided in the act creating the court that the exclusive method of appealing from any finding or judgment of the court is by certiorari to the superior court. Under the circumstances the only way to obtain an adjudication of the alleged disqualification of the jurors is by petition to ·a court of equity; and unless the court of equity takes jurisdiction, the petitioners, without fault on their part, will be deprived of a substantial right of having their case passed upon by an impartial jury. As exhibits the petitioners set forth copies of the record in the application for certiorari and in the motion for new trial, and finally allege generally that they have a valid and meritorious defense to the suit filed against them in the city court. The prayers were, that the court of equity take jurisdiction, and that the petition for certiorari be consolidated with the case, and that a new trial be granted, and that the defendant be restrained and enjoined from enforcing the judgment in the city court. At an interlocutory hearing the judge refused to grant a temporary injunction, and subsequently during the appearance term rendered a judgment sustaining the general and special demurrers on each and every ground taken. The plaintiffs filed separate bills of exceptions to

the judgment refusing to grant an interlocutory injunction and to the judgment sustaining the demurrers and dismissing the petition, properly assigning error on the judgment in each instance.

*W. Carroll Latimer* and *E. E. Cox,* for plaintiffs.

*J. J. Hill, H. H. Merry,* and *O. B. McElvey,* for defendant.

ATKINSON, J. 1. The city court of Pelham was created by special act of the legislature (Acts 1905, p. 325), in the town of Pelham in the county of Mitchell, and given limited civil and criminal jurisdiction over " all that portion of Mitchell county embraced in the 1194th District G. M. of said county." The judge is given authority to hear and determine all civil cases of which the court has jurisdiction; but any party in a civil case is entitled to a trial by a jury, upon entering a demand therefor in writing by himself or his attorney on or before the call of the docket of the court to which the case is made returnable. Where a jury trial is demanded, lists of the names of 18 jurors are required to be furnished, and each side is allowed three peremptory challenges, thus leaving 12 jurors to try the case. Judicial cognizance is taken of the fact that the town of Pelham is a town separate and distinct from Camilla, which is the county-site of the county and not included in the 1194th district, being the territory over which the city court of Pelham has jurisdiction. The city court of Pelham thus established, though called a " city court," is not such a court, within the contemplation of the constitution of this State, as has inherent power to grant new trials. *Welborne* v. *State,* 114 *Ga.* 793 (40 S. E. 857). In section 36 of the act it is expressly declared that " from said city court of Pelham there shall be no appeal, but all errors committed by the said city court of Pelham or the judge thereof, in judgments or rulings, or otherwise in the handling of cases, . . may be corrected by writ of certiorari, returnable to the superior court of Mitchell county." It thus appears that the city court of Pelham was without inherent power under the constitution to grant new trials, and the express provision for correcting errors committed in the court was restricted to the remedy of certiorari to the superior court. The last-mentioned remedy will apply to any error of law committed by the judge, but could not apply to correct such a mistake as allowing disqualified jurors to serve on the jury,

where the disqualification was unknown to the court, the parties, or their attorneys, after due diligence and without fault of the party or his attorney, no issue ever having been presented as to the qualifications of the jurors and no ruling made by the court. If the city court of Pelham could entertain a motion in arrest of judgment, it could not grant such a motion on account of a mistake of the above character, because the mistake does not appear on the face of the record. Under the circumstances there is no provision of law for attacking the verdict on the ground of the disqualification of the jurors; and without the aid of equity an injured party would be remediless. The Civil Code, § 4584, declares: "The judgment of a court of competent jurisdiction may be set aside by a decree, for fraud, accident, or mistake, or the acts of the adverse party unmixed with the negligence or fault of the petitioner." In *Wade* v. *Watson*, 133 *Ga.* 608 (66 S. E. 922), it was held: "The superior court, in the exercise of its equity jurisdiction, upon appropriate pleadings, has power to set aside a judgment of the Supreme Court which was obtained by fraud practiced upon the court in the procurement of the judgment by means of an entry of acknowledgment of service placed on the bill of exceptions by some one other than the defendant in error or his counsel, and without authority or consent of either of them." The question there under consideration involved the setting aside, by a court of equity, of the judgment of another court of competent jurisdiction, on account of fraud. In the course of the opinion the case of *Kohn* v. *Lovett*, 43 *Ga.* 179, was cited and applied. After quoting from that decision it was said: "The ruling cited is relevant to the present case principally because it holds that equity may interfere to prevent the enforcement of the judgment of another court, and even a judgment of the Supreme Court, where it appears that it was obtained by mistake unmixed with laches on the part of the party injuriously affected thereby. When it is considered that the power to correct on account of mistake also involves the power to correct on account of fraud, the ruling quoted leaves no room for further discussion upon the proposition that it is in the power of the superior court, in the exercise of its equity jurisdiction and upon sufficient equitable pleading, to set aside a judgment of the Supreme Court on account of fraud which resulted in the procurement of the judg-

ment." The allegations of the petition make a typical case for equitable relief on the ground of mistake. The defendants in the damage suit requested the judge to purge the jury. There was compliance with this request on the part of the judge; and that the jurors were allowed to serve without their disqualifications being ascertained before verdict was on its facts a mistake upon the part of everybody, and certainly upon the part of the court and the defendants and their attorneys. If the disqualification was known to the jurors or the plaintiff and concealed by them, their fraud in concealing it, coupled with the mistake of the defendants in innocently allowing them to serve, would be ground for equitable relief, just the same as if their disqualification as jurors had been overlooked by mistake of all the parties. The action was for unliquidated damages, and the defendants were entitled to a qualified jury to fix the amount of damages that should be awarded, as well as to determine the defendants' liability for such damages. As the jurors were disqualified and served on the jury, injury will be presumed. *Georgia Railroad* v. *Cole,* 73 *Ga.* 713. The petition set forth a cause of action, in so far as it undertook to set aside the verdict rendered in the city court of Pelham; and it was erroneous to sustain the demurrer in its entirety.

2. As to all the alleged errors committed at the trial, the defendant had an adequate remedy at law by petition for certiorari; and the demurrer was properly sustained as to so much of the petition as sought by consolidation to draw the petition for certiorari into the equitable cause.

3. In the light of what is said in the first division, there was no merit in any other grounds of demurrer.

4. At the interlocutory hearing for injunction the evidence was conflicting as to the time at which the defendants were informed of the disqualification of the jurors. The evidence in behalf of the defendants in the damage suit was to the effect that neither they nor their sole attorney at law learned of the disqualification until after the verdict was returned. There was evidence for the plaintiff in the damage suit to the effect that the defendants were informed of the disqualification of the jurors after the case was submitted to the jury and before a verdict had been returned. If the defendants had knowledge of the disqualification, it was their

duty to complain before the verdict was returned, if they desired to do so. If they did not complain and took the chance of a verdict being in their favor, they would not be heard afterwards to complain of the disqualification of the jurors. *Georgia Railroad* v. *Cole,* supra; *Miller* v. *State,* 139 *Ga.* 716 (78 S. E. 181). The matter of settling the conflict of evidence as to the time when these defendants learned of the disqualification of the jurors was a question, on interlocutory hearing, for determination by the trial judge, and his discretion in refusing the injunction will not be disturbed. As the judge sustained the demurrer to the petition, and in view of the language of the order refusing the injunction, it is probable that he was of the opinion at the interlocutory hearing that the petition did not state a cause of action, and based his decision in refusing an injunction on that erroneous understanding of the law, while if he had been, of the opinion that it stated a cause of action he would not have refused the injunction on account of the conflict of evidence above mentioned. Under the circumstances, while affirming the judgment refusing the injunction, direction is given that the judge again hear the application for injunction, in the light of what is said in this opinion.

On the bill of exceptions assigning error on the judgment sustaining the demurrer, the judgment is *reversed in part and affirmed in part.* On the judgment on the bill of exceptions assigning error on the judgment refusing an interlocutory injunction, the judgment is *affirmed, with direction. All the Justices concur, except*

GEORGE, J. I dissent from the ruling in the second headnote, upon the ground that the case is within the general rule that equity, having assumed jurisdiction for one purpose, will take jurisdiction for all purposes. The judgment on demurrer should, as I think, be reversed generally.