[Civ. No. 9116.   Second Appellate District, Division Two.—February 1, 1935.]

MAY W. BORUM, Respondent, v. H. S. GRAHAM et al., Defendants; MORTGAGE DEPOSIT COMPANY (a Corporation), Appellant.

Lasher B. Gallagher and Frank M. Gunter for Appellant.

Arthur E. Schifferman for Respondent.

WILLIS, J., *pro tem.*—The appeal herein is from the judgment after verdict by a jury, from an order denying a motion for judgment notwithstanding the verdict and from an order denying a motion for new trial.  The appeal from the latter order, being unauthorized, will be dismissed.

Appellant assigns as error orders overruling a demurrer, denying motions for nonsuit and directed verdict and the admission of certain evidence and refusing to strike the same, and contends that the evidence is insufficient to sustain the verdict.

Respondent was injured by contact with the side of a Studebaker automobile while she was crossing northward on Colorado Street from the southeast corner of its intersection with South Broadway in Pasadena, about 10 o'clock in the morning of December 10, 1928. The automobile was being operated by defendant Graham as agent and employee of

appellant. Respondent at the time of injury was in a pedestrian crosswalk, marked on the surface of Colorado Street under authority of a city ordinance. As a result of her injuries she possessed no memory of the circumstances of the accident and could give no testimony thereon.

■ In her first complaint, filed within the year after the accident, she charged defendants with negligence in general terms in operating the automobile so as to collide with her while she was walking across Colorado Street "within the safety zone for pedestrians, duly provided and marked for pedestrians" by the city of Pasadena. By her amended complaints, filed more than one year after the accident, she added to the words "within the safety zone for pedestrians" the following: "sometimes called and described as 'pedestrian cross walk', 'pedestrian zone' and 'pedestrian crossing'". This change in the language of the complaint did not operate to state a new or different cause of action. The complaint would state a cause of action without the quoted words, hence the demurrer was properly overruled and there was no error in the decision that the action was not barred by the statute of limitations pleaded.

We deem it unnecessary to state the testimony. It will suffice to say that upon examination of the transcript thereof it appears that the case was tried and submitted to the jury on evidence and instructions which embraced two distinct theories of liability based on different bases of law; the one founded on negligence in operating the automobile across a pedestrian crosswalk established by municipal ordinance while there was therein on the same half of the street a pedestrian seeking to cross the highway, such negligence being predicated on violation of a city ordinance making it unlawful so to do; the other theory being founded on negligence in operating the automobile so as to pass another vehicle going in the same direction within the street intersection, in violation of the provisions of section 125, subdivision (c) of the California Vehicle Act as it then existed. The evidence relating to the first theory is undisputed, and if it be determined that the ordinance sections on which it was founded are valid enactments, it must follow that the verdict is fully supported. The evidence relating to and affecting the second theory was in sharp conflict. ■ There was substantial evidence which, if believed, would

support the implied finding that defendant Graham operated his automobile so as to pass an automobile bus going in the same direction within the intersection, proximately resulting in a collision with the body of respondent, who was without fault in attempting to cross·the highway. In view of this conflict it was incumbent on the trial court to submit the solution thereof to the jury. This alone required denial of the motion for nonsuit and the motions for directed verdict and for judgment notwithstanding the verdict; and the conclusion of the jury thereon is binding on this court and it may not be said that the verdict is unsupported by the evidence.

This leaves for determination the contention that the court erred in admitting into evidence sections 5 and 8 of the Pasadena city ordinance, and in giving instructions based thereon. Since it cannot be determined from the record on which of the two theories the verdict was founded, if the ordinance provisions in question were invalid the admission thereof and the instructions thereon would clearly be erroneous and prejudicial.

Section 8 of the ordinance made it unlawful for the operator of any vehicle to drive into any crosswalk marked as provided in section 5 thereof, while there was in such crosswalk, on the side of the highway in which the vehicle was traveling, any pedestrian engaged in crossing the roadway, until the pedestrian shall have passed beyond the path of said vehicle. Section 5 provided that the chief of police, subject to the approval of the city manager, was authorized to mark crosswalks equal in width to the adjacent sidewalks, by appropriate devices, marks or white lines on the surface of the roadway at all intersections where in his opinion there is particular danger to pedestrians crossing the roadway. Pursuant to this section the chief of police had marked pedestrian crosswalk white lines across Colorado Street at its intersection with South Broadway, but greater ·in width than the adjacent sidewalk, which excess of width we deem immaterial herein. ■ There was some question raised by appellant as to failure of proof of the securing of approval thereof by the city manager. Such approval must be deemed proven, in the absence of evidence to the contrary, by the presumption of law that official duty has been performed by the officer charged therewith. (Sec. 1963, subd. 15, Code

Civ. Proc.) Appellant also claims that section 5 of the ordinance contained a delegation of legislative power to the chief of police. The function of the chief of police was administrative, not legislative. For the proper enforcement of its ordinance the city legislative body may delegate a power to an officer to determine some fact or state of things upon which the ordinance makes or intends to make its own action depend. *(In re McLain,* 190 Cal. 376 [212 Pac. 620].) We conclude, therefore, that section 5 of the ordinance was a valid enactment. The real problem is: Did the city have power to make it unlawful to drive a vehicle into such crosswalk as provided in section 8?

Under its police power conferred by the Constitution (sec. 11, art. XI) a municipal corporation may enact regulations not in conflict with general law. On all subjects which are strictly municipal affairs its power is paramount over general laws. (Sec. 6, art. XI.) But it has been held that the regulation of traffic upon the streets of a city has ceased to be a matter of local concern and is not a municipal affair within the meaning of the Constitution, and that the power of the municipality to adopt regulations respecting the manner of operating vehicles upon its public streets may be exercised only in the absence of affirmative action by the legislature of the state. Where the field of traffic regulation is occupied by the legislature, a municipality may not enact regulations which conflict therewith. *(Ex parte Daniels,* 183 Cal. 636 [192 Pac. 442, 21 A. L. R. 1172]; *In re Murphy,* 190 Cal. 286 [212 Pac. 30]; *Atlas Mixed Mortar Co.* v. *City of Burbank,* 202 Cal. 660 [262 Pac. 334].) But when the legislature has assumed to regulate a given course of conduct by prohibiting enactments, a municipality with subordinate power to act in the matter may make new and additional regulations in aid and furtherance of the purpose of the general law as may seem fit and appropriate to the necessities of the particular locality and which are not in conflict with general law. *(Mann* v. *Scott,* 180 Cal. 550, 556 [182 Pac. 281].) The California Vehicle Act reflects the legislature's occupation of the field of traffic regulation, and being intended to cover the whole of such field, any local ordinance on that subject in conflict with its provisions would be unconstitutional and void. *(In re Murphy, supra.)*

In the light of these rules, upon examination of the provisions of the ordinance in question, along with the regulations in the California Vehicle Act as it existed in 1928 when the accident herein occurred, we fail to find any conflict between the two enactments, but rather a new and additional regulation in aid and furtherance of the purpose of the general law. The general law at that time contained no regulations affecting the use of public highways by pedestrians as such, nor any regulations providing for or affecting the marking of pedestrian crosswalks on such highways. It was not until the session of 1931 that the legislature assumed to regulate vehicles and pedestrians at marked crosswalks. (Sec. 131½, Cal. Vehicle Act, 1931.) There being no legislative regulations governing or affecting pedestrian crosswalks or the operation of vehicles into or over them at the time of the accident herein, it follows that the sections of the ordinance relating thereto are not in contravention of or in conflict with general law, unless it can be said that to require the operator of a vehicle to stop and not enter a pedestrian crosswalk while there is thereon on the same half of the highway a pedestrian seeking to cross, is in conflict with the provisions of section 113 of the California Vehicle Act, wherein it is provided that, subject to the requirement to drive at a careful and prudent speed so as not to endanger life, it is lawful for the operator of a vehicle to drive across an intersection at a speed not in excess of fifteen miles per hour. We are well satisfied that such cannot be said, for there is no conflict. Nothing in the legislative regulation is changed, and nothing is taken therefrom. The provisions of section 113 prescribe generally the exercise of a constant, careful and prudent speed and maximum lawful speed at intersections. This in effect would require the operator of a vehicle to stop in an intersection if necessary to avoid danger to others lawfully using the highway. The ordinance in question made it obligatory to stop if a pedestrian were in such marked crosswalk on the same side of the street.

We conclude, therefore, that when the legislature extended the operation of the vehicle act to traffic upon city streets as a part of the public highways of the state for the greater protection of all users thereof, it did not thereby intend to prohibit the enactment by municipalities of new and addi-

338

tional police regulations in furtherance of such purpose as might appear reasonable and proper in a given locality; and that section 8 of the ordinance here in question is of such character and is not in conflict with nor in contravention of the provisions or purposes of the California Vehicle Act. In this conclusion we find direct support and persuasive authority in the cases of *Mann* v. *Scott, supra,* and *Flynn* v. *Bledsoe Co.,* 92 Cal. App. 145 [267 Pac. 887]. There was, accordingly, no error in admitting the sections of the ordinance into evidence, nor in giving the instructions based thereon.

We have examined the instructions given at plaintiff's request and complained of by appellant and find therein no prejudicial error, nor any tendency to mislead or confuse the jury. As in all too many cases tried before a jury, a plethora of instructions was requested and given herein, when a much less quantity would have sufficed; but we find nothing in the quality thereof which reveals any error of statement of law, or which departs from the theories on which the cause was tried.

The appeal from the order denying the motion for new trial is dismissed. The order denying the motion for judgment notwithstanding the verdict and the judgment are, and each of them is, affirmed.

Stephens, P. J., and Crail, J., concurred.